UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARSHALL MCCLAIN, individually and on behalf of all others similarly situated<br><br>       Plaintiff<br>v.<br><br>AR RESOURCES, INC.,<br><br>       Defendant | Case No. 2:25-cv-01189-NIQA |

**Plaintiff's Motion to Compel Calling Data that will Identify Putative
Class Members, or, in the Alternative, for a Protective Order Preventing Disclosure of
<u>All Calls Made for Any Purpose from his Cellular Telephone Provider Sought by Defendant</u>**

INTRODUCTION

  This case challenges a debt collector's use of prerecorded voicemails to wrong numbers and individuals, like the Plaintiff, that AR Resources, Inc. had no relationship with. The calls were part of a uniform campaign that affected many others in the same way. The dispute before the Court concerns data about those other people and their telephone number. Plaintiff served targeted interrogatories and document requests to learn who else received these wrong-number calls, whether the calls went to cell phones (which is what is prohibited by the Telephone Consumer Protection Act), and whether recipients had asked for the calls to stop. See <u>Exhibit 1</u>, Defendant's Discovery Responses (Interrogatory No. 8-15 and RPD No. 6-15).

  This information matters. It will allow Plaintiff's expert to study the scope of the calling campaign, identify the class, and assess the Rule 23 factors. Without it, Plaintiff cannot prepare a complete motion for class certification and will not be able to move forward with a trial. Defendant has objected in part, arguing that Plaintiff seeks information about putative class members before the class has been certified. However, Courts regularly reject that view, because pre-certification

1

discovery is often the only way to decide whether certification is appropriate. The Court should compel production here so the class certification decision can be based on a complete record.

## LOCAL RULE 26.1(f) CERTIFICATION

Undersigned counsel certifies, pursuant to Local Civil Rule 26.1(f) and Federal Rule of Civil Procedure 37(a)(1), that he has in good faith conferred with counsel for Defendant AR Resources, Inc. regarding the discovery disputes raised in Plaintiff's Motion to Compel from July 21 through August 8, 2025, the undersigned conferred with Defendant's counsel by email and during multiple substantive videoconferences, including on August 5, 2025. These discussions addressed deficiencies in Defendant's responses to interrogatories and requests for production, the scope of Defendant's subpoena to T-Mobile, and the relevance of subscriber information and calling data for likely class members. After these efforts, the parties remain at an impasse.

## LEGAL STANDARD

Rule 26(b)(1) provides, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26(c) authorizes a party resisting discovery to move for a protective order. Upon a showing of good cause, the court may impose restrictions on the scope or manner of discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Good cause exists only where the movant demonstrates that disclosure will result in a "clearly defined and serious injury." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). This showing must be made with specificity;

"[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," are insufficient. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 192 (D.N.J. 2010) (under Rule 26 standards a plaintiff is entitled to "discovery in support of allegations on behalf of the putative class). Separately, Rule 26(b)(2)(C) requires the court—on motion or on its own—to limit the extent of discovery if the requested material "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or if the request "is outside the scope permitted by Rule 26(b)(1)." See *Smith v. Navient Sols., LLC*, No. 3:17-191, at *5 (W.D. Pa. Nov. 8, 2018).

**ARGUMENT**

**I.     The class data plaintiff seeks is relevant to Rule 23 certification and damages and Courts routinely grant such discovery in TCPA cases.**

The recordings Plaintiff seeks are highly relevant to the numerosity, commonality, typicality, and predominance elements of Rule 23 and the calculation of class-wide damages. Precertification discovery should be allowed where it "will reasonably assist the Plaintiffs in their attempt to meet the requirements of class certification in this case." *Howard v. LVNV Funding, LLC*, No. 3:19-cv-93,, at *13-14 (W.D. Pa. Dec. 4, 2020). Here, Plaintiff is requesting data about prerecorded calls placed to likely class members: who was called, when they were called and why they were called. This information is essential to determining whether a TCPA class can be certified. Consequently, "[i]n most cases, some level of discovery is essential to [a Rule 23] evaluation" and allowing "discovery supporting certification motions may be necessary for sound judicial administration." *Jackson v. Locust Med., LLC*, No. 4:22-CV-00424,, at *4 (M.D. Pa. Oct. 28, 2022)

"Further, in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business

3

relationships with defendants or whether they consented." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-94 (3d Cir. 2011). Without discovery, the "unique facts" of this case, or any other, will not really be exposed.

For example, in *Frey v. Frontier Utilities Northeast LLC*, Judge Marston compelled production of unredacted outbound call records in a TCPA class action, rejecting the defendant's argument that such information could be withheld until after certification. The court explained that "the outbound call list is relevant to class certification and to the merits of [the] claim" because it can be used to determine the number of calls made to offending telephone numbers—facts directly tied to numerosity, liability, and damages. 2020 U.S. Dist. LEXIS 260620, at *6. The same is true here. Plaintiff seeks outbound calling data to identify wrong-number prerecorded calls, determine the size and composition of the class, and calculate class-wide damages. As in *Frey*, Defendant's objections to producing this information until after certification would deprive Plaintiff of the very evidence needed to meet Rule 23's requirements. As Judge Marston explained in *Frey*:

> Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g.*, *Gossett v. CMRE Fin. Servs.*, 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the numerosity and typicality requirements of Rule 23(a). *See Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (*See* Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *id.* § 227(b)(3)(B) (creating a private right of action to recover "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").

> EAG argues that Frey is not entitled to this personal identifying information pre-class certification, but, as discussed below, the Court did not bifurcate the discovery period in this matter. As such, Frey was required to seek discovery on both his individual claim and his class claim at the same time and could not wait until after the Court ruled on his motion for class certification to request this relevant information.

*Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620 *5-6 (E.D. Pa. Apr. 13, 2020). For the same reasons in *Frey*, the motion to compel disclosure of documents and information related to prerecorded calls placed to likely class members should be granted here.

Similarly in *Bond v. Folsom Insurance Agency*, *LLC*, the court considered whether to compel Defendant to produce "unredacted records of the individuals that Folsom contacted with prerecorded messages." 3:24-cv-2551, ECF No. 46 (N.D. Tex. July 11, 2025). There the court concluded that "the identity and telephone numbers that [plaintiff] seeks" are "relevant to the Court's class certification inquiry" and ordered the defendant "to produce unredacted copies of the 'broadcast reports' that produced to permit [plaintiff] to conduct expert analysis, including for the purposes of class certification." *Id.* In fact the court there concluded that "[defendant's] position on what is relevant prior to certification was not substantially justified" and ordered the defendant to pay the expenses incurred in drafting a motion to compel class member data. *Id.*

Documents and information related to calls placed to likely class members are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a), for which plaintiff must show the class 'suffered the same injury ... such that the ... class claims will share common questions of law or fact" with those of the named plaintiffs.'"); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (compelling the production of

5

call data because "the Court agrees with the weight of authority on this matter that call logs and dialing lists are relevant to the commonality prong of the class certification inquiry. The requested list would also be relevant to Plaintiff's need to show numerosity.") (internal citation omitted); *O'Shea v. Am. Solar Sol., Inc.*, No. 14CV894-L (RBB), 2016 WL 701215 (S.D. Cal. Feb. 18, 2016) ("Upon reviewing requests 9, 28, 29, and 30, the Court agrees that the documents sought are relevant to his action. Specifically, these requests generally concern the total number of call recipients and the total number of phone calls made to them."); *Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015) (granting a motion to compel production of outbound call lists, as such lists were "relevant to the class claims and meritorious claims and defenses in this case"); *Webb v. Healthcare Revenue Recovery Grp. LLC*, No. C. 13-00737 RS, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014) (compelling production of outbound call lists). As the Northern District of Illinois explained in a TCPA case:

> Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, copies of all faxed advertising documents, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.
>
> ***As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified***.

*Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) (emphasis added); *see also Central Alarm Signal, Inc. v. Business Fin. Servs., Inc.*, No. 14-14166, 2016 WL 3595627, at *2 (E.D. Mich. July 5, 2016) (granting motion to compel in putative TCPA class action, in part, because "the Court cannot permit [Defendant] on the one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its

6

position that a class should be certified.") (quoting *Whiteamire Clinic, P.A.*, 2013 WL 5348377, at *3); *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer.").

In the same vein, "[o]utbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable." *Thomas v. Fin. Corp. of Am.*, No. 3:19-CV-152-E, 2019 WL 5157022, at *1 (N.D. Tex. Oct. 10, 2019) (compelling the production of similar data sought here); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable."); *see also Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13CV1556-JLS DHB, 2014 WL 3894348, at *2 (S.D. Cal. June 12, 2014) ("the Court finds that the outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable").

Not surprising, then, is that courts across the country, including in this circuit, routinely compel TCPA class action defendants to provide analogous information relevant to the sizes of proposed classes in TCPA cases related to sending a pre-recorded message to the wrong number. As the Northern District of Indiana recently explained:

> When certifying a class, the Court must find numerosity, commonality, typicality, and predominance. Fed. R. Civ. P. 23. Considering Federal Rule 23's threshold requirements, precertification discovery is appropriate to determine whether a class can be properly certified, and discovery should be sufficiently broad to allow a putative class plaintiff, like Mr. Fralish, a chance to meet these requirements.
> \*     \*     \*
> Nevertheless, courts in class-action TCPA cases have consistently held that information regarding plaintiffs and putative class members who were called by a

> defendant or by others on a defendant's behalf, such as outbound call lists and the number of calls made to those recipients are relevant to the numerosity and commonality requirements listed in Rule 23. . . . Although the requested information here is not precisely a call list, it does seek to quantify the number of calls and is therefore analogous to the outbound call lists that have been found relevant to the numerosity and commonality requirements. Thus, the requested text message-related information is relevant to class certification in a way that is analogous to the relevance of call logs in these other TCPA class actions. Moreover, text messages are analogous to phone calls in other TCPA cases such that the text data requested through ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 is relevant to the Rule 23 numerosity and commonality requirements for class certification applicable in this case.
> 
> \*     \*     \*
> 
> As Digital has not shown the point at which the burden of producing this discovery outweighs its benefits, Digital has not met its burden and its undue burden objections are overruled.
> 
> For the foregoing reasons, Mr. Fralish is entitled to the class related data he seeks through Interrogatories 7–16 and RFPs 7–14, 17, 19, 34–35.

*Fralish v. Digital Media Sols., Inc.*, No. 3:21-cv-00045-JD-MGG, 2021 WL 5370104, at \*9-10 (N.D. Ind. Nov. 17, 2021) (compelling the production of class data in a putative TCPA class action) (internal citations and quotations omitted); *accord Fralish v. Deliver Tech., LLC*, No. 3:20-CV-00353-DRL-MGG, 2021 WL 3285528, at \*9 (N.D. Ind. Aug. 2, 2021) ("For the foregoing reasons, Plaintiff is entitled to the class related data he seeks through RFPs 7-14 & 33, and ROGs 9-15.").

Also analogous, in *Bellenger v. Accounts Receivable Mgmt., Inc.*, the Southern District of Florida granted the plaintiff's motion to compel responses aimed at identifying the potential size of the plaintiff's proposed class under the TCPA:

> In Requests for Production Nos. 15 and 16, the Plaintiff sought documents "identifying or listing the telephone numbers to which [the Defendant] placed any DIALED CALL to a cellular telephone at any time on or after January 23, 2015," or documents "that record or list every DIALED CALL" made by the Defendant during that same time period, including all documents that "identify, reflect and/or evidence the number of times each such telephone number was called." (ECF No. 21-3) The Defendant objected to these requests as overbroad, because the requests were not limited to calls placed to "wrong parties," and also stated that the requested

information includes personal health information; these objections are overruled, for the reasons discussed above.

*   *   *

Requests for Production Nos. 17 and 18 sought documents listing every person who received a call since January 23, 2015, and who informed the Defendant that: 1) the person did not wish to be called, or 2) that the Defendant had called a wrong number, or 3) that the person did not have a contract with the Defendant, and also a list of every call made to any person <u>after</u> they had provided one of the three responses above. The Defendant objected that the request was overbroad because it is not limited to cellular phones and also includes people outside the proposed class because those who did not wish to be called or who did not have a contract with the Defendant are not "wrong parties." For the reasons stated above, the Defendant's objections as to the cellular phone designation and the "wrong parties" are overruled.

The Defendant also argues that Requests Nos. 17 and 18 are overbroad because they seek information that has no bearing on whether the Defendant had prior express consent to make the calls, but the Defendant cites no precedent for such a determination. The Court overrules the Defendant's objection because if the Defendant intends to pursue its defense that it had the prior express consent of those called, then it must produce the evidence on which it will rely. "[A]t this stage of the proceeding, [the Defendant] must produce whatever evidence of prior express consent it will use to rebut [the Plaintiff's] attempt to establish predominance under Federal Rule of Civil Procedure 23(b)(3) so the issue can fully be litigated during the class certification phase of this case." *See, e.g.*, *Medina v. Enhanced Recovery Company, LLC*, No. 15-14342-CIV-MARTINEZ/MAYNARD, 2017 WL 5196093, *8 (S.D. Fla. Nov. 9, 2017).

In summary, the Defendant's objections addressed above each are overruled, and the Plaintiff is entitled to the information she seeks.

No. 19-60205-CIV, 2019 WL 4284070, at *5-6 (S.D. Fla. Sept. 10, 2019).

Because the sought-after recordings are plainly relevant to contested elements of Rule 23, including numerosity, this Court should compel their production. This is particularly so because Defendant maintains that the discovery produced to date is insufficient for Plaintiff to meet her burden.

9

Separately, recordings where call recipients informed Defendant that it is calling the wrong number are relevant to class-wide damages. Pertinent here, a TCPA plaintiff may bring "an action to recover for actual monetary loss from [a violation of the TCPA], or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). Defendant is therefore liable for no less than $500 in damages for each of its violations of the TCPA. *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997) ("§ 227(b)(3)(B) . . . provides for a minimum penalty of [$]500 for each violation of the TCPA").

Because courts calculate damages under the TCPA based on the number of violations—in this case, the number of artificial or prerecorded voice messages delivered to class members during the class period—discovery regarding the number of prerecorded voice messages Defendant delivered to wrong or reassigned telephone numbers is highly relevant to damages suffered by absent class members. For this additional reason, the recordings Plaintiff seeks—which he will use to identify potential class members—are highly relevant and this Court should compel their production. Furthermore, the TCPA also allows for a damages award to be increased, up to treble damages, if the violation is found to be knowing or willful. *See* 47 U.S.C. § 227(b)(3). The recordings are likely to show evidence that Defendant knew it was calling an individual other than the one that it intended to reach, and potentially doing so multiple times despite being told not to, like they did with Ms. Bayles. *See e.g. Bratcher v. Navient Sols., Inc.*, No. 3:16-cv-519-J-20JBT, 2017 U.S. Dist. LEXIS 35015, 2017 WL 895739, at *2 (M.D. Fla. Mar. 2, 2017) (finding both "formal and informal prior complaints" relevant to whether the defendant's actions were intentional under either the TCPA); *Osborne v. Gila, LLC*, No. 15-62585-cv-COOKE/TORRES, 2016 U.S. Dist. LEXIS 190574, 2016 WL 7508260, at *1-2 (S.D. Fla. May 24, 2016) (finding prior complaints to be relevant to whether the defendant willfully violated

the TCPA); *Morser v. Hyundai Capital Am., Inc.*, No. 2:15-cv-117-FtM-29CM, 2015 U.S. Dist. LEXIS 97494, 2015 WL 4527016, at *3 (M.D. Fla. July 27, 2015) ("A finder of fact could conclude that the existence of multiple complaints suggests that Hyundai was aware it was violating the TCPA.") As such, the information should be produced.

## II. Any purported privacy concerns can be addressed by a protective order.

Defendant has also suggested that producing class-wide call records would implicate privacy concerns for the individuals it called with a prerecorded voice message. But those concerns cannot justify withholding the information here. The parties have agreed to a protective order that expressly contemplates the production of sensitive categories of information, including customer account records, call records, personal identifying information, and internal corporate data. Once entered, that order will provide robust confidentiality protections, allowing Defendant to designate call data and related records as confidential and limiting their use to this litigation. *See Bell v. Lockheed Martin Corp.,* No. 08-6292 (RBK/AMD), at *38-39 n.15 (D.N.J. Sep. 15, 2010) ("to the degree that discovery . . . raises special privacy concerns, those concerns may be addressed by way of a protective order limiting the distribution and use of discovery.").; *Smith v. Life Inv'rs Ins. Co. of Am.*, No. 2:07-cv-681, 2009 U.S. Dist. LEXIS 96310, at *4 (W.D. Pa. Oct. 16, 2009) (privacy interests of potential fact witnesses "are adequately addressed by the Protective Order.). Courts routinely reject blanket privacy objections where a protective order is in place. *See Gamecraft, LLC v. Vector Putting, LLC*, No. 6:12-cv-51-Orl-28KRS, 2012 WL 12899019, at *1 (M.D. Fla. July 2, 2012) (rejecting confidentiality-based objections as "nonsensical" where the parties had entered into a confidentiality agreement); accord *Peters v. Credit Protection Ass'n, LP*, No. 2:13–cv–767, 2014 WL 6687146, at *7 (S.D. Ohio Nov. 26, 2014) (holding that "the names and contact information of putative class members are relevant and discoverable"). The protective

11

order here will fully address any legitimate concerns while allowing Plaintiff access to the evidence necessary to test Defendant's affirmative defenses and prove the Rule 23 requirements.

    **III.    Defendant's claims of burden ring hollow because Plaintiff has offered to undertake the work.**

Defendant asserts that it cannot comply with certain requests (e.g., RFP No. 11) or that responding would be unduly burdensome (e.g., RFP No. 7). Yet the core data at issue—classwide call records sought in RFP No. 6—can be produced in the native format maintained by Defendant's vendor. Plaintiff has offered to accept this native data without requiring Defendant to perform the processing or analysis it claims would be burdensome. *See, e.g.,* Exhibit 1, RFP No. 7. Plaintiff's expert can then review and analyze the data to obtain the responsive information sought by these and related requests, including those Defendant claims it cannot now provide. This approach eliminates the claimed burden while ensuring the preservation and disclosure of highly relevant information needed for class certification, liability, and damages. Defendant's refusal to produce even unprocessed, native pre-recorded call data is not a legitimate effort to avoid undue burden, but an attempt to withhold plainly relevant evidence.

    **IV.    In the alternative the Court should enter a protective order preventing Defendant from subpoenaing Plaintiff's call records.**

If the Court accepts Defendant's position that classwide call records are not discoverable at this stage, then fairness dictates that Defendant should not be permitted to obtain Plaintiff's individual call records from third parties for calls that are completely unrelated to the case at hand (or any case at all). Discovery should proceed on an equal footing. Allowing Defendant to obtain detailed records of Plaintiff's calls while withholding its own calling data would create an asymmetry that undermines the purpose of the discovery rules and hampers Plaintiff's ability to prepare her case.

Defendant has issued a subpoena seeking subscriber information and phone records showing *all incoming, outgoing, or forwarded calls* for the timeframe of February 1, 2024 through August 1, 2025, regarding Plaintiff's telephone number (443) XXX-XXXX. <u>Exhibit 2</u>. Much of these records are indisputably irrelevant here. They involve calls having nothing to do with Defendant, the TCPA, and any parties claim or defense. Nonetheless, they cover the same general type of data that Defendant refuses to produce here, which is clearly far more relevant. Accordingly, in the alternative to compelling responses to Interrogatories 8–15 and RFPs 6–15, the Court should enter a protective order barring Defendant from subpoenaing Plaintiff's call records. This would ensure parity in the scope of information available to each side and avoid prejudicing Plaintiff.

## CONCLUSION

For these reasons, the Court should compel Defendant to produce the requested discovery, including the native call records and related information necessary for class certification, liability, and damages. In the alternative if Defendant is permitted to withhold classwide calling data, the Court should quash Defendant's subpoena for Plaintiff's call records.

Dated: August 21, 2025

Respectfully Submitted,

*/s/ Anthony Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com

13